UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VIRGINIA DIANN FRANTZ, | CASE NO. 4:17CV1505 |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| v. | Magistrate Judge George J. Limbert |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | |

Plaintiff Virginia Diann Frantz ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB").  ECF Dkt. #1.  In her brief on the merits, filed on March 6, 2018, Plaintiff asserts that the administrative law judge's ("ALJ") finding that she could perform medium work is not supported by substantial evidence.  ECF Dkt. #15. Defendant filed a response brief on April 6, 2018.  ECF Dkt. #16.  Plaintiff filed a reply brief on April 20, 2018.  ECF Dkt. #17.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

In August 2013, Plaintiff applied for DIB, alleging a disability onset date of June 8, 2011. ECF Dkt. # 14 ("Tr.") at 145.[2]  The claim was denied initially and upon reconsideration.  *Id.* at 73, 86.  Plaintiff then requested a hearing before an ALJ, which was held on April 18, 2016.

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system.  When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages.  Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

*Id.* at 37. Following the hearing, Plaintiff amended her alleged onset date to July 12, 2011, her fifty-fifth birthday. *Id.* at 224. On August 5, 2016, the ALJ issued a decision denying Plaintiff's claim. *Id.* at 17. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the decision issued by the ALJ on August 5, 2016, stands as the final decision.

Plaintiff filed the instant suit seeking review of the ALJ's August 5, 2016, decision on July 17, 2017. On March 6, 2018, Plaintiff filed a brief on the merits. ECF Dkt. #15. Defendant filed a response brief on April 6, 2018. ECF Dkt. #16. Plaintiff filed a reply brief on April 20, 2018. ECF Dkt. #17.

## II.    RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A.    Medical Evidence

In May 2011, Plaintiff complained of chest pain, body aches, neck and knee pain, and burning in her feet. Tr. at 229. Plaintiff was diagnosed with borderline diabetes mellitus, anxiety and depression, and chest pain. *Id.* In July 2011, Plaintiff complained that her medication was not controlling her pain and her dosage was increased. *Id.* at 228. Plaintiff again sought treatment in January 2012 for hyperlipidemia, thyroid disease, and arthritis. *Id.* at 292. On examination, Plaintiff complained of joint pain and rated the pain 8/10. *Id.* at 294. Plaintiff was diagnosed with arthritis, hyperlipidemia, and hypothyroidism. *Id.*

On January 23, 2012, Plaintiff visited a consultative medical examiner. Tr. at 243. Plaintiff complained of hypercholesterolemia, right thyroidectomy, sinus allergies, stress, and arthritis. *Id.* It was noted that Plaintiff's gait was normal, she was able to walk one block at a normal pace and could walk over uneven surfaces, she was able to carry out routine ambulatory activities, and she was able to squat and heel-to-toe walk. *Id.* at 246. The consultative examiner diagnosed hypercholesterolemia, status post partial right throidectomy, environmental allergies, insomnia, and generalized arthralgias. *Id.* Further, the consultative examiner stated, "[o]nly [Plaintiff's] subjective complaint of status post partial thyroidectomy is consistent with the objective medical findings." *Id.*

The following day, January 24, 2012, Plaintiff underwent a consultative mental examination. Tr. at 248. It was noted that Plaintiff presented with a lifelong history of

generalized anxiety order, with nervousness in novel situations and tendency to pick at her skin when nervous. *Id.* The consultative examiner stated the Plaintiff: could manage her funds; appeared to function in a basic way and was able to care for her own hygiene, grooming, and dressing needs independently; was applying for work; took a trip to Ohio with her husband to look for a job; used a computer; relaxed in her yard; watched television; played up to thirty cards of bingo at a time, "but has not lately"; cared for a small dog that she occasionally took to the park; occasionally walked at a flea market or park; occasionally visited the mall; occasionally went to a movie or restaurant with her daughter and husband; was a good cook; and could do household chores such as cleaning. *Id.* at 249-50. Additionally, the consultative examiner indicated that Plaintiff: appeared alert and oriented; was appropriately dressed and groomed with good basic hygiene; had no prominent gait abnormalities or gross motor coordination problems; demonstrated adequate recall for recent and remote events; displayed speech and responses that were logical and relevant; appeared somewhat nervous and picked her face occasionally; had a full range of affect; and appeared in no severe acute mental distress. *Id.* at 250. Plaintiff was diagnosed with generalized anxiety disorder, some avoidant personality traits, and variable and generalized body pains attributable to arthritis. *Id.*

On April 5, 2012, Plaintiff reported painful urination. Tr. at 286. Plaintiff displayed normal range of motion in her extremities and was diagnosed with dysuria, hyperlipidemia, allergic rhinitis, and a cold sore. *Id.* at 288. On July 12, 2012, Plaintiff reported persistent leg pain and denied chest pain, shortness of breath, or headaches. *Id.* at 280. Plaintiff was diagnosed with hyperlipidemia, hypothyroidism, arthritis, allergic rhinitis, and gastroesophageal reflux disease. *Id.* at 282. The same diagnosis, minus the allergic rhinitis, was given on November 13, 2012, when Plaintiff complained of arthritis and burning in both feet. *Id.* at 276-78.

In June 2013, Plaintiff complained of one week of constant pain in the right arm. Tr. at 264. Plaintiff was positive for severe shoulder pain and showed marked tenderness and a restricted range of motion in her right shoulder. *Id.* Accordingly, Plaintiff was referred for an MRI of the right shoulder. *Id.* at 267. On September 19, 2013, Plaintiff complained of bilateral

-3-

pain in the lower legs and was diagnosed with claudication of the lower extremity. *Id.* at 260. A Doppler study performed on September 30, 2013, revealed no evidence to suggest significant stenotic disease in the bilateral lower extremities. *Id.* at 309. In November 2013, Plaintiff reported mild to moderate intermittent pain in her left shoulder and was diagnosed with hyperlipidemia, flu vaccination, hypothyroidism, claudication of the lower extremity, arthritis, left shoulder pain, and elevated liver enzymes. *Id.* at 306. A x-ray of Plaintiff's left shoulder taken on November 26, 2013, showed mild degenerative changes involving the left acromioclavicular joint. *Id.* at 208.

On December 3, 2013, Plaintiff underwent an additional consultative examination. Tr. at 310. Plaintiff reported that she was disabled due to bilateral leg pain and back pain. *Id.* After the examination, the consultative examiner diagnosed a history of generalized joint pain, hypothyroidism, and nicotine dependence. *Id.* at 312. Additionally, the consultative examiner stated that Plaintiff could be expected to bend, stand, walk, sit, carry, handle objects, hear, speak, write, and travel with regular breaks. *Id.* The consultative examiner also indicated that Plaintiff could be expected to perform work-related mental activities if given simple instructions. *Id.*

In March 2014, Plaintiff displayed mild depression and was diagnosed with hyperlipidemia, hypothyroidism, and arthritis. Tr. at 376. Plaintiff reported lower abdominal pain and foot pain in June 2014. *Id.* at 370. After the examination, Plaintiff was diagnosed with a lower urinary tract infection, hyperlipidemia, hypothyroidism, and bilateral foot pain. *Id.* at 372. In September 2014, Plaintiff reported an abscess on her neck. *Id.* at 336. A CT scan of Plaintiff's neck revealed severe disk height loss and degenerative endplate changes at C5-6 with bilateral foraminal narrowing. *Id.* Plaintiff was diagnosed with severe spondylosis at C5-6 with lateral foraminal narrowing. *Id.* There were lesser degenerative changes at the remaining cervical levels. *Id.* at 337.

X-rays of Plaintiff's feet taken in September 2014 were unremarkable. Tr. at 367. It was noted that Plaintiff reported pain in her feet and hips. *Id.* at 366. Plaintiff was hospitalized in January 2015, and underwent an operation for cystoscopy, placement of a left stent, and extracorporeal shock wave lithotripsy. *Id.* at 321, 326. On March 3, 2015, a x-ray of Plaintiff's

spine revealed degenerative spondylosis in the lumbar region. *Id*. at 380.  In July 2015, Plaintiff complained of a fluttering in her heart and bilateral shoulder pain.  *Id.* at 355.  An EKG showed no abnormalities.  *Id.* at 357.  Additional x-rays revealed mild degenerative changes involving Plaintiff's acromioclavicular joints bilaterally.  *Id.* at 378.  Plaintiff was diagnosed with osteoarthritis of the right and left shoulders.  *Id.* at 353.

### B. Testimonial Evidence

The hearing in this case was held on April 18, 2016, with Plaintiff, her attorney, and a vocational expert ("VE") present before the ALJ. Tr. at 38.  On examination by her attorney, Plaintiff testified that she completed the twelfth grade and had previously worked with her husband as the manager of a mobile home park.  *Id.* at 41-42.  Continuing, Plaintiff stated that she had stopped working in 2011 as neither her nor her husband could perform the duties of the job due to physical problems.  *Id.* at 42.  Plaintiff indicated that her main health problem was her neck and shoulders and that she experienced burning pain.  *Id.* at 42-43.  When asked how long she could stand in one position before needing to sit, Plaintiff responded that she could stand for fifteen minutes.  *Id.* at 43.  Plaintiff testified that she could occasionally lift and carry eleven pounds, but could not lift that amount frequently.  *Id.* at 43-44.

Continuing, Plaintiff stated that she also experienced constant pain in her legs and feet that worsened with movement. Tr. at 44.  Plaintiff indicated that she could walk ten to fifteen minutes before needing to stop for a ten-minute break to rest.  *Id.*  When asked about her medications, Plaintiff testified that the medications helped but never made the pain go away completely.  *Id.* at 46.  Plaintiff stated that she had never seen a specialist because she could not afford an appointment.  *Id.*  When asked about her hands, Plaintiff stated that her hands went completely numb due to carpal tunnel syndrome, but indicated that her doctors had never tested for carpal tunnel syndrome.  *Id.* at 46-47.  Next, Plaintiff testified that she suffered from depression and anxiety, and that she experienced stress due to all of her aches and pains.  *Id.* at 48.

Plaintiff indicated that she and her husband lived with their daughter and her roommate in Florida at their daughter's house. Tr. at 48.  When asked about chores, Plaintiff stated that she

washed dishes, vacuumed, and cooked, but that she had to take breaks while performing these chores.  *Id.* at 48-49.  Plaintiff testified that she did not have a driver's license because she was too paranoid to drive.  *Id.* at 49.  Continuing, Plaintiff stated that she watched television or sat in her yard when at home.  *Id.*  Plaintiff noted that she could only sit for fifteen minutes before needing to stand and that she needed to lay down approximately three times per day for fifteen minutes each time.  *Id.* at 50.

      The ALJ then examined Plaintiff.  Tr. at 50.  Plaintiff testified that she had been treated for chest pain and kidney stones, and that the deterioration in her neck and shoulders was due to arthritis.  *Id.* at 51-52.  Continuing, Plaintiff stated that she had made two prior applications for benefits that were unsuccessful in the prior two to three years.  *Id.* at 53.  The ALJ indicated that the most recent application was made in 2012 and Plaintiff's counsel was afforded an opportunity to brief whether the prior application should be reopened.[3]  *Id.* at 54-55.  Next, the ALJ examined the VE.  *Id.* at 58.  The VE testified that Plaintiff could not perform her past relevant work, but could perform medium work as a laundry laborer, agricultural produce packer, and floor waxer.  *Id.* at 59-60.  Following the ALJ's examination, the VE was examined by Plaintiff's counsel.  *Id.* at 61.  Based on the questions posed by Plaintiff's counsel, the VE added that the jobs identified could not be performed if the individual had to alternate between sitting and standing every fifteen minutes or if the individual required three fifteen-minutes breaks throughout the workday.  *Id.*  The ALJ then concluded the hearing.  *Id.* at 63.

### III.   **RELEVANT PORTIONS OF THE ALJ'S DECISION**

      The ALJ issued an unfavorable decision on August 5, 2016.  Tr. at 17.  In the decision, the ALJ indicated that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  *Id.* at 22.  The ALJ then stated that Plaintiff had not engaged in substantial gainful activity since July 12, 2011, the amended alleged onset date.  *Id.*  Continuing, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and cervical spine; degenerative joint disease of the shoulders; history of agina;

---

[3]Plaintiff later waived any right to reopen the prior application.  Tr. at 224.

hypothyroidism; and hyperlipidemia. *Id.* The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 24.

After consideration of the record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following additional limitations: frequent overhead reaching with the upper extremities; occasionally climb ramps and stairs; and never climb ladders, ropes, or scaffolds. Tr. at 24. The ALJ then indicated that Plaintiff was unable to perform any past relevant work. *Id.* at 29. Continuing, the ALJ stated that Plaintiff was an individual of advanced age on the alleged disability onset date, had a high school education and could communicate in English, and that the transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled whether or not she had transferable job skills. *Id.* at 30. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 12, 2011, through the date of the decision. *Id.* at 31.

## IV.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI.  LAW AND ANALYSIS

Plaintiff asserts that the ALJ's finding that she could perform medium work is not supported by substantial evidence. ECF Dkt. #15 at 11. First, Plaintiff states that none of the state agency physicians or consultative examiners had seen the CT scan of her neck that was taken in September 2014 showing severe disk height loss and degenerative endplate changes at C5-6, with bilateral foraminal narrowing and lesser changes at the remaining levels. *Id.* at 13. Plaintiff also states that these medical sources had not seen the lumber x-ray taken in March 2015 showing degenerative spondylosis in the lumber region. *Id.* Continuing, Plaintiff asserts that these medical sources "did not have full knowledge as to the severity of [Plaintiff's] cervical and lumbar arthritis." *Id.*

Next, Plaintiff claims that it was not her "fault that she did not have better evidence as to the severity of her arthritis at an earlier date" because she did not have insurance. ECF Dkt. #15 at 14. Plaintiff states that the low-income clinic and volunteer doctors could not perform all of the testing that would have revealed the severity of her condition. *Id.* Continuing, Plaintiff states that it was "mere happenstance" that she was able to undergo the CT scan of her neck when she presented to the emergency room. *Id.* Plaintiff indicates that the CT scan did show narrowing of the area where the nerves exit the spinal column and thus her complaints of tingling, numbness, and weakness in her arms, hands, legs, and feet are consistent with the findings of the CT scan. *Id.* at 15. Following this assertion, Plaintiff summarizes her complaints of tingling, numbness, and pain. *Id.* at 15-16.

Plaintiff then states that the ALJ acknowledged that many of her allegations of pain were supported by the record and that her treatment, including opioid pain medication, was consistent with treatment for someone in severe pain. ECF Dkt. #15 at 16. Continuing, Plaintiff assets that "[i]t is difficult to imagine that a reasonable person could find that such a claimant could perform a job where she was lifting up to 50 pounds a third of the day, and 25 pounds two-thirds of the day, and was on her feet six hours out of that eight hour day." *Id.* at 17. Plaintiff states that none of the doctors who provided opinions on her work limitations had seen the CT scan or lumber x-ray, and thus a consultative examination was necessary to enable the ALJ to make a decision. *Id.*

Finally, Plaintiff states that the applicable rules require a finding of disability if it was determined that Plaintiff could only perform sedentary and/or light work. *Id.* at 18.

Defendant contends that the ALJ properly developed the record and properly considered the medical opinion evidence and Plaintiff's subjective complaints when forming the RFC assessment. ECF Dkt. #16 at 11. Continuing, Defendant states that the ALJ properly considered the opinions of the consultative examiners and state agency physicians, and that where the record does not contain a treating source opinion, the ALJ is entitled to give weight to a non-treating source's opinion. *Id.* at 12. Defendant avers that although additional medical evidence, namely the CT scan and lumbar x-ray, was obtained after these medical sources issued their opinions, "such lapse of time does not mean that the ALJ should not consider these opinions." *Id.* at 13.

Moreover, according to Defendant, the ALJ considered this additional evidence and imposed further postural limitations. *Id.* Defendant states that the ALJ noted that Plaintiff has cervical spine deterioration as evidenced by the CT scan of her neck performed in September 2014, and that the ALJ considered that the x-ray of Plaintiff's lumbar spine showed degenerative spondylosis. *Id.* (citing Tr. at 27, 337, 380). According to Defendant, the ALJ determined that this subsequent medical evidence did not undermine the January 2014 opinion issued by the state agency reviewing physician. *Id.* (citing Tr. at 29, 83). Defendant states that the ALJ instead determined that this subsequent evidence supported additional postural limitations due to degenerative disease and reaching limitations due to her cervical spine and shoulder conditions. *Id.* at 13-14. Based on the above, Defendant states that the ALJ properly considered the medical evidence obtained after the reports and opinions issued by the consultative examiners and state agency reviewing physicians were submitted. *Id.* at 14.

Next, Defendant states that the ALJ was not required to send Plaintiff to another consultative examiner, as suggested by Plaintiff, since she had already been sent to two consultative examiners during her alleged period of disability and the record was thus amply developed for a decision. ECF Dkt. #16 at 14. Defendant then states that it was Plaintiff's duty to develop the record and that she has not presented any medical source statements from her treating providers, and did not suggest that a consultative examination was necessary at the

-10-

hearing or in her post-hearing letter. *Id.* at 15.  Continuing, Defendant states that Plaintiff's attorney expressly acknowledged at the hearing that she had no additional records to present and that the record was complete. *Id.*  Next, Defendant states that the record showed that Plaintiff: consistently had a normal gait and range of motion; could heel-to-toe walk; could stand on her heels and toes; and could walk over rough or uneven surfaces and carry out normal ambulatory activities such as shopping. *Id.* at 16 (citing Tr. at 26-28, 246, 261, 276-77, 288, 312-13, 353, 357, 360, 363).  Additionally, Defendant states that the ALJ properly considered Plaintiff's activities of daily living, which included household chores such as washing dishes and vacuuming, walking her dog in the park, and walking around the flea market. *Id.* (citing Tr. at 23, 25, 28, 48-49, 176, 211, 249, 301).

Defendant also avers that while Plaintiff's testimony of back pain was somewhat corroborated by x-rays of her lumber spine showing degenerative spondylosis, the medical record was otherwise void of any treatment for significant complaints of back pain or objective findings supporting her claim of disabling back pain.  ECF Dkt. #16 at 17.  Likewise, according to Defendant, the medical record does not support Plaintiff's claims of significant limitations in her hands and feet due to numbness and tingling. *Id.*  Defendant also notes that while Plaintiff reported a pain level of eight in January 2012 and July 2013, she reported lower levels of pain, including a pain level of 0/10, on many other instances.[4] *Id.* (citing Tr. at 261, 272, 277, 287, 294, 352, 359, 362).  Additionally, Defendant notes that despite her allegations of disabling pain, Plaintiff had been applying for work at fast-food restaurants, department stores, and other establishments, and also took a trip to Ohio with her husband in search of a job. *Id.*  For these reasons, Defendant asserts that Plaintiff has not met her burden of establishing disabling limitations. *Id.* at 18.

Finally, Defendant avers that the Medical-Vocational Guidelines direct a finding that Plaintiff was not disabled considering her RFC and vocational factors.  ECF Dkt. #16 at 18. Defendant states that Plaintiff is mistaken that a finding of disability was required if she was

---

[4]Plaintiff contends that the reports of pain levels of 0/10 "was mere oversight on the doctor's filling out the computerized form."  ECF Dkt. #17 at 2.

limited to light or sedentary work. *Id.* at 19. Defendant notes that the Medical-Vocational Rules for sedentary and light work would direct a finding of disability only if Plaintiff's education level did not provide for direct entry into skilled work and her past work skills were not transferable. *Id.* Continuing, Defendant states that the ALJ made no findings regarding whether Plaintiff's education level provided for direct entry into skilled work or whether her skills were transferable, and thus it was not clear from the record which rule would apply if Plaintiff had been found limited to light or sedentary work. *Id.* For these reasons, Defendant asserts that the ALJ's decision is supported by substantial evidence.

Plaintiff's argument is without merit. Essentially, Plaintiff asserts that the ALJ improperly relied on the opinions submitted by the state agency reviewing physicians and the consultative examiners because these medical sources did not review medical evidence produced after the opinions were issued. *See* ECF Dkt. #15 at 11-18. Plaintiff's argument is not supported by the ALJ's decision. After discussing the medical record in great detail, the ALJ stated:

> As for opinion evidence, great weight is given to the opinions of the State Agency psychologist and physician.
>
> Specifically, Dr. Hinkeldey's opinion from January 28, 2014, as to the impact of [Plaintiff's] anxiety and somatoform disorders is not undermined by subsequent medical evidence. Accordingly, it is given great weight.
>
> Dr. Peele, State Agency physician, opined on January 3, 2014, that [Plaintiff] is able to lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently, and is able to sit, stand and walk for 6 hours in an 8 hour workday. This opinion is given significant weight because subsequent medical evidence does not undermine it. Rather, it shows that [Plaintiff] is further limited in her postural activities due to her degenerative disease and in her reaching by her shoulder condition.
>
> Dr. Marrero, consultative examiner, opined in 2013 the [Plaintiff] is "expected" to bend, stand, walk, sit, handle objects, hear, speak, write, and travel with regular breaks and that her work-related mental activities are expected to be performed given simple instructions.

Tr. at 28-28 (internal citations omitted). Prior to making these findings, the ALJ specifically discussed the report from the other consultative examiner, to whom Plaintiff described her daily activities, as well as the CT scan of Plaintiff's neck taken in September 2014 and the x-ray of Plaintiff's lumbar spine taken in March 2015. Tr. at 27.

-12-

Accordingly, the ALJ was aware of the timing of the CT scan and x-ray when weighing the opinions submitted by the state agency reviewing physicians and consultative examiners. Plaintiff asserts that the ALJ improperly assigned weight to the opinions because medical evidence existed that was not considered in the opinions. However, this medical evidence was not in existence at the time the opinions were issued and Plaintiff's argument is not supported by any legal precedent. Instead, the ALJ was required to issue a decision that is supported by substantial evidence. *See* 42 U.S.C. §405(g). Here, the ALJ provided a detailed discussion of the evidence of record before explaining how the opinions of the state agency reviewing physicians and consultative examiners were considered when making the disability determination.[5] Tr. at 24-29. As for Plaintiff's argument that she should not be faulted for lacking evidence as to the severity of her condition since she did not have insurance, Plaintiff does not cite any legal authority indicating that her lack of insurance shifts the burden in this case to Defendant. Plaintiff bears the burden of showing that she was disabled, and that burden has not been met. *See Moon*, 923 F.2d at 1181.

Additionally, Plaintiff has failed to demonstrate that the ALJ erred by failing to order a consultative examination. At the time of the hearing, Plaintiff had seen two consultative examiners. Plaintiff did not request an additional consultative examination at the hearing or in the post-hearing letter sent to the ALJ. *See* Tr. at 37-63, 224. While the ALJ is charged with developing a full and fair record, Plaintiff has failed to show that the record was not full or fair. *See Sims v. Apfel*, 520 U.S. 103 (2000). Rather, Plaintiff acknowledged at the hearing that the record was complete. Tr. at 39. Further, Plaintiff had seen two consultative examiners prior to the hearing. As stated above, Plaintiff bears the burden of providing evidence showing disability and the ALJ was not required to refer Plaintiff for a third consultative examination. Finally, Plaintiff's claim that she would have been disabled according to the Medical-Vocational Rules if

---

[5]The ALJ did not expressly indicate what level of weight was assigned to the reports from the consultative examiners. *See* Tr. at 28-29. It appears from the decision that the ALJ took these reports into consideration when making an RFC determination, however, the ALJ only specifically assigned great weight to the opinions of the state agency reviewing physician and psychologist. *Id.*

-13-

she was limited to light or sedentary work need not be considered as the ALJ properly limited Plaintiff to medium work with additional limitations. For these reasons, the undersigned recommends that the Court find that the ALJ's decision is supported by substantial evidence.

### **VII.** **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

Date: October 18, 2018    */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).